**Tommy THOMPSON and Wife, Kathy Mims Thompson, Appellants,**

v.

**Dwayne JAMISON, Appellee.**

No. 9395.

Court of Appeals of Texas, Texarkana.

Nov. 5, 1985.

David Hill, Wilder & Hill, Henderson, for appellants.

Ron Adkison, Wellborn, Houston, Adkison, Mann & Sadler, Henderson, for appellee.

CORNELIUS, Chief Justice.

The Thompsons appeal from a directed verdict against them in their suit to enforce a boundary by agreement. They contend there were issues of fact to be decided by the jury as presented by the evidence. We agree and reverse the directed verdict.

Thompson's and Jamison's lands abut. Because of the poor condition of a dividing fence, cattle from both sides wandered across the border. As a result, Thompson and Jamison agreed to rebuild the fence. Jamison said that he did not know where the true corners were, so Thompson proposed that they survey the land to establish

the corners. Jamison agreed, and recommended a surveyor named Daniels, because he had done some surveying in the area. Thompson and Jamison agreed that they would build the fence on the "deed-called" boundary line, since neither Thompson nor Jamison knew where the corners were. Thompson never claimed the existing fence as a boundary line. Daniels surveyed the land and Jamison and Thompson assisted him. The surveyor established the corners and set stakes while both Thompson and Jamison were present. Jamison did not object to the surveyor's corners and stakes. Thompson then started to build the fence by erecting steel pipes in concrete at the corner stakes set by the surveyor. Jamison was present and did not object. Work was stopped because of rain before the fence could be strung. A week or so after the corners were set, Thompson received a registered letter from Jamison's lawyer telling them to stop the fence. Several months later Jamison destroyed the corner posts by using a blow torch.

Thompson argues in a single point of error that the court improperly granted a directed verdict in the face of disputed factual issues. If there was some evidence on each element of his cause of action, a directed verdict was not proper.

■ When there is uncertainty as to the location of a dividing line, the parties may fix it by parol agreement. For the agreement to be binding, it must be executed by the parties by the erection of physical monuments on the agreed line or by otherwise marking the line. The agreement may be proven by the conduct of the parties or by express words of agreement. *Gulf Oil Corp. v. Marathon Oil Co.*, 137 Tex. 59, 152 S.W.2d 711 (1941).

■ Here, Thompson's proof raised fact issues on each of the elements of his cause of action since he presented evidence that he and Jamison were uncertain as to the true boundary line, that they agreed to accept the deed-called line as the boundary, that the deed-called line was established by the survey, and that the corners were erected showing the surveyed line as the agreed line.

Jamison argues that the instructed verdict was nonetheless proper because the effect of the existing fence prohibited the parties from changing the boundary, the facts showed only an agreement to agree later, and there was a fatal variance between Thompson's pleadings and proof.

■ While it is true that predecessors in title may have established a fence boundary by agreement, such agreement is generally an issue of fact. *Gulf Oil Corp. v. Marathon Oil Co.*, supra; *Tide Water Oil Co. v. Hale*, 92 S.W.2d 1102 (Tex.Civ.App. —Texarkana 1936, writ dism'd). Moreover, Thompson placed that matter in issue by offering proof that neither he nor Jamison claimed the existing fence as a boundary, and that Jamison admitted uncertainty as to the corners of the true boundary line.

■ The argument that Jamison only agreed to agree in the future falls short of establishing the proposition as a matter of law. One reasonable inference from the proof offered at trial was that Jamison, by words and action, agreed to be bound by the line found by the surveyor and marked by the erection of the steel corners. At the least, there was an issue of fact as to whether or not there was at that point a boundary by agreement. The thrust of Jamison's argument on this point is that he agreed only to accept the boundary called for in his deed, and not necessarily the one found by the surveyor. However, the surveyor testified that the line he laid out was the line called for in the deed. This, together with the evidence raising inferences that Jamison accepted the staked corners as the boundary line, was sufficient to raise a fact issue on the alleged agreement.

■ Finally, Jamison argues that there was a fatal variance between Thompson's pleadings and the proof. Thompson's petition claimed a boundary by agreement, and cited the surveyor's boundary line as the agreed line. At trial, the surveyor's boundary line was introduced. Thompson testified that Jamison agreed to abide by the

deed line as surveyed. Jamison contends that because there were some variances in the distance calls in the deed and the line established by the surveyor, there was a fatal variance in the proof. As pointed out earlier, in spite of these differences, there was testimony that the surveyed line was the deed-called line, and evidence that Jamison agreed to it. Weaknesses, discrepancies, and conflicts in the evidence are to be resolved by the jury.

The judgment of the trial court is reversed and the case is remanded for trial on the merits.